FRANCISCO QUIÑONES, demandante y apelado, *v.* TROPICAL BEVERAGES, INC., e INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, demandadas y apelante la segunda.

Número 10648.

*Sometido:* 13 de noviembre de 1952. *Resuelto:* 11 de febrero de 1953.

*Juan Enrique Géigel, Guillermo Silva* y *Luis F. Cuyar,* abogados de la apelante; *Pedro N. Colberg,* abogado de la codemandada Tropical Beverages, Inc.; *Antonio Reyes Delgado,* abogado del apelado.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del tribunal.

El domingo, día 22 de agosto de 1948 y en la Carretera Militar, entre Vega Alta y Bayamón, ocurrió una colisión entre dos vehículos de motor. Uno era propiedad de Francisco Quiñones Miranda, quien lo dedicaba al servicio público de

transportación de pasajeros entre Arecibo y San Juan. El otro vehículo pertenecía a la corporación Tropical Beverages, Inc., quien lo utilizaba en su empresa o negocio de preparar, embotellar y distribuir bebidas gaseosas. En esa colisión el vehículo de Quiñones resultó seriamente averiado y los pasajeros que en él viajaban sufrieron lesiones.

Quiñones Miranda demandó en la Sección de Arecibo del anterior Tribunal de Distrito, a la Tropical Beverages, Inc., y a la Indemnity Insurance Co. of North America, compañía aseguradora del vehículo de aquélla, reclamándoles los daños y perjuicios sufridos por la pérdida total de su vehículo y la privación de su uso.([1]) En la demanda alegó que el accidente se debió exclusivamente a la negligencia del conductor del vehículo de la demandada Tropical Beverages, Inc., quien era un empleado de ésta, en funciones del negocio de dicha demandada.

Contestó la Tropical Beverages, Inc., negando los hechos esenciales de la demanda y aduciendo varias defensas especiales. En contestación separada la compañía aseguradora negó también los hechos esenciales de la demanda, y levantó, entre otras defensas especiales, las siguientes: (a) que al ocurrir el accidente, el vehículo propiedad de Tropical Beverages, Inc., no estaba siendo usado en gestiones comerciales para beneficio de dicha empresa, sino que por el contrario, dicho vehículo se usaba en aquel momento en gestiones puramente personales de algunos de los empleados de Tropical Beverages, Inc., y que el chófer que lo conducía no actuaba en el desempeño de sus deberes u obligaciones como empleado de la susodicha Tropical Beverages, Inc., y, (b) que está exenta de responsabilidad porque en el momento del accidente el vehículo de la asegurada no se dedicaba a alguno de los propósitos estipulados en la póliza de seguro.

---

([1]) Las personas que viajaban en el vehículo de Quiñones interpusieron en el mismo tribunal otra demanda contra las mismas demandadas, reclamando daños y perjuicios por las lesiones que sufrieron. Ambos casos fueron sometidos en el tribunal a quo por la misma prueba, con excepción de la referente a la naturaleza y cuantía de los daños reclamados.

Después de celebrarse la vista del caso en sus méritos, ([2]) la corte a quo dictó sentencia declarando con lugar la demanda y condenó a las demandadas a pagar al demandante la suma de $1,932.80, con intereses legales desde la radicación de la demanda, más las costas y $450 para honorarios de abogado, decretando que de dichas sumas la co-demandada Indemnity Insurance Co. of North America pagaría solidariamente con la otra demandada, la suma de $1,000 (máximum de responsabilidad asumida por la aseguradora bajo la póliza de seguros en vigor), más las costas y honorarios de abogado en la suma fijada.

Contra dicha sentencia interpuso la compañía aseguradora el presente recurso de apelación, imputando al tribunal a quo la comisión de los siguientes errores:

"Primer Error: El Tribunal del Distrito Judicial de Puerto Rico, Sección de Arecibo, cometió error al resolver que en el momento en que ocurrió el accidente que dió origen a este pleito, la persona que conducía el vehículo de motor propiedad de la co-demandada, Tropical Beverages, Inc., era un empleado de dicha co-demandada, en gestiones de su empleo y para beneficio de su principal.

"Segundo Error: El tribunal sentenciador cometió error de derecho al concluir que, bajo los términos de la póliza de seguro expedida por la co-demandada Indemnity Insurance Company of North America a favor de Tropical Beverages, Inc., y en vigor al ocurrir el accidente, dicha Indemnity Insurance Company of North America venía obligada a indemnizar al demandante-apelado los daños y perjuicios sufridos en el accidente objeto de este pleito."

---

([2]) Surge de los autos que después de celebrarse la vista del caso ante el juez A. Román Font, éste dictó sentencia desestimando la demanda por el fundamento de que no se habían probado los daños reclamados. El demandante solicitó la reconsideración de dicha sentencia y el mismo magistrado la dejó sin efecto hasta que se resolviera la moción de reconsideración. Mientras tanto quedó vacante el cargo del juez Román Font por renuncia de dicho magistrado. Por estipulación de las partes el caso quedó sometido a otro magistrado del mismo tribunal por el récord taquigráfico de la vista original y cierta prueba adicional presentada posteriormente ante el juez sentenciador.

Están fuera de discusión en este recurso los siguientes hechos: (1) que el vehículo que ocasionó los daños era propiedad de la demandada Tropical Beverages, Inc.; (2) que en el momento del accidente el referido vehículo era conducido por un empleado de dicha demandada; y (3) que la causa próxima y única del accidente fué la negligencia del conductor del referido vehículo.

Al resolver que las demandadas responden de los daños sufridos por el demandante el tribunal sentenciador concluyó (a) que el vehículo de la demandada Tropical Beverages, Inc., era conducido en el momento del accidente por un agente o empleado suyo en el desempeño de sus deberes como tal agente o empleado en gestiones de dicha demandada, y (b) que el vehículo de la Tropical Beverages, Inc., estaba siendo usado en el momento del accidente para uno de los propósitos cubiertos por la póliza, o sea, la transportación de materiales incidentales al negocio de la asegurada.

En el juicio celebrado en el tribunal a quo las demandadas apelantes intentaron probar que el vehículo de la Tropical Beverages, Inc., estaba siendo usado el día del accidente en gestiones particulares para provecho y beneficio de algunos de sus empleados. A este fin sus testigos declararon que la demandada Tropical Beverages, Inc., a petición de algunos de sus empleados, prestó a éstos el vehículo envuelto en el accidente para que se trasladaran de San Juan a Vega Baja donde dichos empleados celebraban un pasadía para despedir a uno de sus antiguos jefes, quien había renunciado el cargo de gerente de la susodicha corporación demandada; que en dicho vehículo se transportaron ese día cinco o seis cajas de bebidas gaseosas fabricadas por esta demandada y regaladas a sus empleados para la fiesta; que la Tropical Beverages, Inc., no venía obligada a pagar ni pagó los servicios prestados ese día por el empleado que condujo su vehículo habiendo sido prestados dichos servicios gratuitamente.

■■ Discutiendo el primer error señalado arguyen las apelantes que para una correcta y legal aplicación del princi-

pio contenido en el artículo 1803 de nuestro Código Civil, es requisito previo e indispensable a la responsabilidad del patrono que la parte actora que ha incurrido en la acción u omisión torticera sea un empleado y se encuentre en funciones de su cargo o empleo para beneficio de su patrono. Al efecto citan aquellos casos en los cuales hemos negado responsabilidad del patrono cuando el empleado no ha actuado "en ocasión de sus funciones", *Rivera* v. *Maldonado*, 72 D.P.R. 479; o cuando el empleado actúa en su propio beneficio y para su propio interés, *Díaz* v. *Rodríguez*, 69 D.P.R. 533; *Vigio* v. *Cartagena*, 71 D.P.R. 710, o cuando su chófer o empleado se aparta de su trabajo para realizar algún propósito ajeno a los deberes de su empleo, *Acosta* v. *Crespo*, 70 D.P.R. 239. Citan además aquellos otros casos donde también hemos resuelto que el arrendador o comodante de un vehículo no responde de los daños causados por el mismo mientras es conducido por el arrendatario o comodatario o un agente de éstos, *Hernández* v. *de Jesús*, 70 D.P.R. 1.

La dificultad en aplicar a este caso las doctrinas expuestas anteriormente consiste en que las apelantes descansan en que el tribunal a quo consideró probado que la camioneta de la codemandada Tropical Beverages, Inc., había sido prestada por dicha empresa a varios de sus empleados para trasladarse al sitio de la fiesta cuando en realidad dicho tribunal no hizo una conclusión a ese efecto. Por el contrario dicho tribunal no dió crédito a la prueba presentada por las demandas encaminada a establecer el referido hecho. No sería correcto afirmar, como lo hacen las apelantes, que su prueba sobre ese extremo no fué contradicha. El tribunal a quo admitió en evidencia un informe sobre accidente del trabajo firmado y rendido por el presidente de la Tropical Beverages, Inc., al Fondo del Seguro del Estado en el cual hace constar que el obrero (chófer Juan Bautista Pérez) "estaba realizando su trabajo ordinario al sufrir el accidente." El accidente a que se refiere el mencionado informe es el mismo que dió origen a este pleito.

El hecho de que del propio informe se desprenda que la admisión contenida en el mismo no fué hecha a base del conocimiento personal del informante, quien para la fecha del accidente se encontraba ausente de Puerto Rico, no desvirtúa la naturaleza y el valor que pueda tener tal admisión, la que claramente es inconsistente con la teoría desarrollada por las demandadas durante la vista del caso en sus méritos.

Informes de esta clase rendidos a las autoridades administrativas, a los fines establecidos por ley, pueden usarse como admisiones aun cuando no se basen en conocimiento personal. 4 Wigmore, *On Evidence*, página 99, sección 1073 (5). El propio tratadista, en la cita que copiamos a continuación, expone las razones para la admisión de esta clase de prueba.

"Uno de los principales usos y efectos de una admisión, es desacreditar la reclamación de una parte demostrando otras declaraciones suyas inconsistentes (ante, sección 1048). Por tanto, es inmaterial el hecho de que esas otras declaraciones pudieran haber sido admisibles independientemente como el testimonio de un testigo hábil. Es la inconsistencia de ellas con la presente reclamación de la parte, lo que les da fuerza lógica.

"(1) En particular, el *conocimiento personal*, indispensable en un testigo (ante, sección 656), no se requiere aquí. Si la parte contraria, por ejemplo, alegara ahora que su contrato, hecho por un agente en Francia, le da derecho a un cargamento de sábanas de seda, su declaración del mes anterior de que su contrato era por cintas de seda desacreditaría su presente reclamación, aun cuando fuera aparente que en ninguno de los dos casos él hablaba con conocimiento personal. El conflicto de reclamaciones es la circunstancia importante, y el elemento de conocimiento personal meramente aumenta o disminuye esa importancia. Comoquiera que una parte puede hacer una reclamación y radicar alegaciones independientemente del conocimiento personal que de los hechos tenga, sería una falacia exigir, en sus admisiones inconsistentes, un elemento de conocimiento personal que originalmente no se requiere para promover su reclamación. Tal requisito está repudiado por la mejor opinión judicial . . . ." (Escolios omitidos.) 4 Wigmore, ob. cit., sección 1053, página 12.

Véanse casos citados al escolio 2, y especialmente *London Guarantee & Accident Co.* v. *Woelfle*, 83 F.2d 325; *Fitzgerald* v. *Lozier Motor Co.*, 154 N.W. 67; *Grodsky* v. *Consolidated Bag Co.*, 26 S.W.2d 618; *Little Fay Oil Co.* v. *Stanley*, 217 Pac. 377.

██ El hecho de que la admisión presentada en evidencia no se funda en el conocimiento personal de la parte que la hace, puede afectar su peso probatorio, mas corresponde al tribunal sentenciador determinarlo y no a nosotros. Al formular sus conclusiones de hecho, el tribunal a quo consideró toda la prueba, tanto testifical como documental presentada por una y otra parte y dió crédito a la del demandante y no a la de la demandada.(³) Al así actuar resolvió el conflicto que surgía de la prueba en cuanto a si el empleado de la Tropical Beverages, Inc., actuaba o no en el desempeño de sus deberes como tal empleado, mientras conducía el vehículo que ocasionó los daños. Tal actuación no será revocada en apelación a falta de demostración de que dicho tribunal haya actuado movido por pasión, prejuicio o parcialidad, o haya incurrido en error manifiesto en la apreciación de la prueba. *Pueblo* v. *Rodríguez,* 67 D.P.R. 735 y casos citados a la página 740; *Peña* v. *Sucn. Blondet*, 72 D.P.R. 9.

██ Determinada la responsabilidad de la Tropical Beverages, Inc., queda por determinar la de la compañía aseguradora. Conforme a los términos de la cláusula aseguradora número 2, la compañía aseguradora se compromete a "Pagar toda suma de dinero que el asegurado venga obligado a satisfacer por concepto de daños y perjuicios impuestos por la Ley a consecuencia de daño a la propiedad de otros...." En las

---

(³) Además de la prueba que consta en el récord taquigráfico de la vista original celebrada ante otro magistrado, el juez sentenciador oyó prueba testifical presentada por las demandadas sobre el hecho principal en controversia, esto es, sobre el uso a que se destinaba el vehículo de la Tropical Beverages, Inc., en el momento del accidente. Tal prueba consistió en el testimonio de César Parés, gerente de la referida corporación y el mismo fué al efecto de que él había prestado ese día el indicado vehículo a los empleados de la corporación para asistir a una fiesta.

"Declaraciones" que se unen a la póliza, se dispone que "El automóvil descrito se usará principalmente en la Isla de Puerto Rico y solamente para el fin que se dispone en la relación que sigue: "Subdivisión 'B-1' RELACIÓN DE USOS . . . (B) Comercial—(1) Transporte de materiales o mercancías incidental al negocio u ocupación del asegurado que en esta póliza se describe . . ." La póliza cubre a la corporación asegurada "En lo que respecta a accidentes ocurridos . . . . por razón . . . . del uso de tal vehículo según consta en dichas declaraciones." La cuestión se reduce, pues, a determinar si el transporte de las cajas de refrescos era incidental al negocio del asegurado de tal forma que al momento de ocurrir el accidente el vehículo estaba siendo usado en su carácter comercial. El tribunal a quo concluyó que sí, diciendo:

"Ya hemos resuelto que el vehículo de la asegurada, en el momento del accidente, era conducido por su *chauffeur,* en el desempeño de los deberes o funciones de su empleo; que en ese momento el vehículo de la asegurada transportaba hacia la fábrica de ésta en San Juan, cajas y botellas vacías, propiedad de la asegurada, que le eran devueltas, después de haber utilizado su contenido; que es una práctica del negocio de la asegurada el regalar bebidas con propósito de anuncio, y que es obligación de los que se sirven de las bebidas fabricadas por la asegurada, ya sea mediante compra o regalo, devolver a la asegurada sus botellas o cajas vacías, que ella recoge y lleva a la fábrica en sus propios vehículos, y, en su consecuencia, resolvemos ahora que el vehículo estaba siendo usado para uno de los propósitos cubiertos por la póliza, o sea la transportación de materiales incidentales al negocio de la asegurada."

La obligación de la compañía aseguradora se limita a lo dispuesto en la póliza de seguro. Si bien para que ella sea responsable también tiene que serlo el asegurado, *Bithorn* v. *Santana,* 68 D.P.R. 300, a la inversa no ocurre lo mismo, o sea, que aun cuando el asegurado sea responsable civilmente ello no quiere decir que también ha de serlo la aseguradora. Ello es así porque la obligación de la asegurada depende de lo dispuesto en los artículos 1802 y siguientes, mientras que

la obligación de la aseguradora se limita a lo dispuesto en la póliza de seguros. Así, la obligación de la Tropical Beverages, Inc., depende de que al momento de ocurrir el accidente el conductor del vehículo estuviese guiando el mismo dentro de las funciones de su empleo, además de que, como es natural, deben probarse los elementos de la culpa o negligencia. La obligación de la Indemnity Insurance Co. depende, sin embargo, de que al momento de ocurrir el accidente se le estuviese dando al vehículo el uso comercial que señala la póliza. ¿Era ésa la situación? Creemos que, bajo los hechos probados, debemos contestar esa pregunta en la afirmativa. Todo lo que requiere la póliza es que la transportación de materiales o mercancías sea *incidental* al negocio del asegurado. En *Journal Co.* v. *General Acc. Fire & Life Assur. Corporation*, 205 N.W. 800, se interpretó una cláusula de una póliza de seguros que disponía que los vehículos allí asegurados se usarían para transportar materiales y mercancías en *conexión* con el negocio del asegurado. El patrono asegurado—publicadores de un diario—celebró una reunión con sus vendedores y les regaló algunos refrescos. Terminada la reunión, ordenó que los vendedores fuesen llevados a sus casas en un vehículo de la compañía, en el cual iban, además, las botellas vacías de refrescos y un paquete de periódicos. En ese momento, ocurrió un accidente. Se resolvió que dichos artículos constituían materiales y mercancías y que su transportación lo era en conexión con el negocio del asegurado como editor de un periódico y sostuvo la corte, a la página 802, que "aun cuando se argumentara que la transportación de esos artículos era un mero incidente y que el propósito dominante para el uso del automóvil en ese momento era el llevar a los vendedores a sus respectivas casas, aún así la póliza no requiere que la transportación de mercancía o material será el propósito dominante para el cual se esté usando el automóvil." La solución del caso de autos se facilita porque todo lo que exige la póliza es que la transportación de materiales y mercancías sea *incidental* al negocio del asegurado. Aún asumiendo que

el propósito dominante fuese transportar a un grupo de empleados a un pasadía y volverlos a llevar à sus casas, sin embargo, no hay dudas de que hubo también transportación de materiales y mercancías, a saber, las botellas de refrescos que el conductor del vehículo debía devolver a la fábrica, siendo dicha transportación incidental al negocio de la asegurada. En cuanto al significado de la palabra "incidental" en una póliza de seguro, véase el caso de *Heritier* v. *Century Indemnity Co.*, 162 Atl. 573.

■■ En fin, comoquiera que el asegurador fué el que escogió el lenguaje de la póliza, debemos interpretar cualquier duda o ambigüedad en su contra y a favor del asegurado y al así interpretar la póliza resolvemos que al momento del accidente el vehículo estaba siendo usado incidentalmente al negocio del asegurado, dentro del lenguaje usado en la misma. Por lo demás, se ha resuelto que una cláusula de la naturaleza que examinamos significa, meramente, que el uso allí descrito debe ser el uso regular y dominante que debe dársele al vehículo, pero ello no quiere decir que ése sea el único uso que se le pueda dar al mismo y que de ocurrir un accidente mientras se le está dando otro uso, ello no es óbice para recobrar bajo la póliza. *Terrasi* v. *Pierce*, 23 N.E.2d 871; *Firemen's Ins. Co.* v. *Rye*, 254 S.W. 465; *Sunshine Mut. Ins. Co.* v. *Addy*, 47 N.W.2d 285 (opinión concurrente).

■ Ahora bien, aun cuando la corte a quo no cometió los errores señalados y discutidos por las apelantes, no debemos confirmar la sentencia apelada sin antes modificarla. Dicha sentencia es errónea en tanto en cuanto concede intereses desde la interposición de la demanda. En casos de esta naturaleza la concesión de intereses sólo procede desde la fecha en que se dicta la sentencia. *Martínez* v. *Báez*, 63 D.P.R. 783; *Graniela* v. *Yolande, Inc.*, 65 D.P.R. 705 y casos citados a la pág. 707.

*Debe modificarse la sentencia apelada en el sentido de condenar al pago de intereses solamente desde la fecha de la sentencia, y así modificada, confirmarse.*